IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARVIN A ALAS RIVERA, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-26-3435 |
| U.S. DEPARTMENT OF HOMELAND SECURITY, et al., | * | |
| | * | |
| Respondents. | | |

***

# MEMORANDUM OPINION

THIS MATTER is before the Court on Petitioner Marvin Alfredo Alas Rivera's Amended Petition for Writ of Habeas Corpus (the "Amended Petition") (ECF No. 15). The Amended Petition is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Amended Petition in part and deny it in part.

## I. BACKGROUND

Petitioner Marvin Alfredo Alas Rivera is a citizen and native of El Salvador and a permanent resident of Mexico. (Am. Pet. Writ Habeas Corpus ["Am. Pet."] ¶ 52, ECF No. 15). In 2016, Alas Rivera witnessed MS-13 gang members murder a member of the Eighteenth Street gang in El Salvador; one of the MS-13 gang members involved in the murder noticed Alas Rivera, walked up to him, and threatened him at gun point. (See Decl. Marvin Alas Rivera ["Alas Rivera Decl.] ¶¶ 2–3, ECF No. 13-3). Alas Rivera attests that after he witnessed the murder, he "started seeing gang members following [him]" and "watching [his] house." (Id. ¶ 4). To avoid the gang members, Alas Rivera "changed jobs,"

but he states that the gang members found him at his new job. (Id.). At one point, Alas Rivera was "shot at and chased by MS-13 gang members" in Colonia Valle Nuevo, El Salvador. (Id.). After a year of being followed and threatened by gang members, Alas Rivera "knew the gang would" not "leave [him] in peace" and "didn't think the police would protect [him] because [he] had seen off-duty police officers hanging out with gang members several times" and "knew several police officers who" worked with gang members "when they weren't on duty." (Id. ¶ 5). Believing that "any report [he] made to the police would find its way back to the gang members who wanted [him] dead," Alas Rivera fled to Mexico, where he sought humanitarian relief and eventually obtained permanent residency. (Id. ¶¶ 5–6; Am. Pet. ¶ 52).

In Mexico, Alas Rivera met his partner in Tapachula and eventually settled in Tijuana with her and her son (the "son"). (Alas Rivera Decl. ¶ 6). Alas Rivera, his partner, and her son lived in Tijuana for about four years; there, Alas Rivera first held a factory job and later worked in construction. (Id. ¶ 7). In April 2021, "two men" followed the son home on two separate occasions. (Id. ¶ 8). On the second occasion, during an "agitated" conversation outside their home, the men threatened Alas Rivera at gun point. (Id.). Alas Rivera later learned that the men who followed his partner's son were members of "Grupo el Telo," a criminal group based out of Tijuana. (Id. ¶ 9). Upon further questioning, the son son informed him that the men "had been extorting him at work for a while," and "[w]hen he told them that he didn't have any money to pay," they "tried to force him to sell drugs." (Id.). When he refused, they threatened to kill him, his mother, and Alas Rivera. (Id.).

After this incident, the son "stopped going to work"; Alas Rivera attempted to "find work in another part of Tijuana" but was not "able to work enough to support" the family. (Id. ¶ 10). The area where Alas Rivera and his family worked also "was controlled by a rival criminal organization, which made it dangerous for" him and his family to continue living there. (Id.). Neither Alas Rivera nor his partner considered reporting the incident to the police because "it was common knowledge in Tijuana that the police were corrupt and paid by the same criminals that" Alas Rivera and his family "were trying to avoid." (Id.). According to Alas Rivera, because the "drug cartels in Mexico are far-reaching and very well organized," he did not think he and his family "could have been safe in another part of Mexico." (Id. ¶ 11). In fact, Alas Rivera believes that no matter where they lived in Mexico, "the Grupo el Tello would have found" them and "killed" them. (Id.). Therefore, Alas Rivera and his family "instead went to the U.S.-Mexico border and sought" the help of a case worker who helped them "request to come to the United States" so that they could seek asylum. (Id. ¶ 10).

On or about June 19, 2021, Alas Rivera applied for admission to the United States at the Sab Ysidro Port of Entry. (Am. Pet. ¶ 54). On April 7, 2022, Alas Rivera was placed in removal proceedings under 8 U.S.C. § 1229a, where the Department of Homeland Security ("DHS") designated El Salvador as the only country of removal. (Id. ¶¶ 54–55). During the removal proceedings, Alas Rivera "expressed a fear of removal to El Salvador and applied for asylum on June 16, 2022." (Id. ¶ 56). On October 25, 2024, DHS stipulated to Alas Rivera's eligibility for Withholding of Removal under the Convention Against Torture, and the Immigration Judge ("IJ") issued an order finding Alas Rivera removable

but withholding removal to El Salvador. (Id.).[1] The IJ did not make any finding as to the likelihood that Alas Rivera would face persecution and/or torture in Mexico because DHS designated only El Salvador in the removal proceedings and stipulated to Alas Rivera's eligibility for Withholding of Removal only as to El Salvador. (See id. ¶¶ 55–56). Subsequently, Immigration and Customs Enforcement ("ICE") issued Alas Rivera an Order of Supervision ("OSUP") on or about October 25, 2024,[2] (see Notice of Revocation of Release at 2, ECF No. 19-2),[3] and on February 27, 2025, the United States Citizenship and Immigration Services ("USCIS") approved Alas Rivera's application for an Employment Authorization Document ("EAD") under 8 U.S.C. § 1231(a)(7), which is valid through February 26, 2030. (Am. Pet. ¶ 57; see generally EAD Approval Notice, ECF No. 13-6).

Over a year later, on August 29, 2026, DHS detained Alas Rivera outside a Home Depot in Aspen Hill, Maryland, and transferred him to the Baltimore ICE Facility Hold

---

[1] Contrary to the Parties' assertions, the IJ's Order does not designate El Salvador as the country of removal. (See IJ Order at 4, ECF No. 19-1). In fact, the Order designates no country to which Alas Rivera may be removed whatsoever. (Id.). Because, however, the Parties do not dispute that DHS designated El Salvador as the only country of removal, (Resp'ts' Resp. Am. Pet. Writ Habeas Corpus at 1–2, ECF No. 19; Am. Pet. Writ Habeas Corpus ["Am. Pet."] ¶¶ 55–56, ECF No. 15), the Court will accept this undisputed fact for the purposes of its analysis.

[2] The date of issuance of the order of supervision listed on the Notice of Revocation of Release is difficult to read. (See Notice Revocation Release at 2, ECF No. 19-2). Alas Rivera asserts that it states a date in approximately October 2024, (Am. Pet. ¶ 58), and the Government does not dispute this in its Response. Therefore, the Court will presume that DHS ordered Alas Rivera released on an order of supervision some time in or around October 2024.

[3] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

Room. (Am. Pet. ¶ 58). That same afternoon, ICE served Alas Rivera with a Notice of Revocation of Release stating its intent to remove him to Mexico, (Notice of Revocation of Release ["NRR"] at 2, ECF No. 19-2), and conducted an "informal interview" with Alas Rivera during which he "did not provide a statement" and only "requested to make a phone call to his family," (Noncitizen Informal Interview at 2, ECF No. 19-3). ICE informed Alas Rivera that it was revoking his release under 8 C.F.R. § 241.4(l), stating that it is "seeking a travel document to effect" his "expeditious removal to MEXICO." (NRR at 2).

On September 16, 2026, Alas Rivera communicated to ICE his fear of removal to Mexico and asked for a Reasonable Fear Interview. (Am. Pet. ¶ 59). On October 1, 2026, a USCIS asylum officer conducted a "third country screening" and concluded—in a one-page form with one checked box—that Alas Rivera "did not establish that it is more likely than not that [he] will be persecuted or tortured in Mexico." (Third Country Screening Notice at 2, ECF No. 19-7). Respondents DHS, Vernon Liggins, Markwayne Mullin, and Attorney General Todd Blanche (collectively, "Respondents" or "the Government" have not yet afforded Alas Rivera a Reasonable Fear Interview. (See Am. Pet. ¶ 71; Pet'r's Reply Resp'ts' Resp. Am. Pet. Writ Habeas Corpus ["Reply"] at 2, ECF No. 20).

On October 5, 2026, ICE served Alas Rivera with a Form I-229(a), titled "Warning for Failure to Depart," with an instruction sheet directing Alas Rivera to "[a]pply for a travel document/passport from [the] embassy or consulate" of his "native country" and to "[s]olicit permission from another country, which may be able to accept [him], to enter that country." (Warning Failure Depart Form at 2–3, ECF No. 19-8). ICE has scheduled a

custody review for Alas Rivera for November 27, 2026. (Notice Noncitizen File Custody Review at 2, ECF No. 19-6).

Although initially detained in Baltimore, Alas Rivera has since been transferred to the Caroline Detention Facility in Bowling Green, Virginia, where he remains detained to date. (Am. Pet. ¶ 1). He filed his original Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 on August 29, 2026. (ECF No. 1). Alas Rivera subsequently filed his Amended Petition on October 2, 2026. (ECF No. 15). The Government filed its Response on October 19, 2026, (ECF No. 19), and Alas Rivera filed his Reply on October 23, 2026, (ECF No. 20).

## II. DISCUSSION

### A. Standard of Review

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2241(a), (c)(3). If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243.

### B. Analysis

Alas Rivera argues that his continued detention violates 8 U.S.C. § 1231 and his due process rights and that his removal to Mexico without judicial review of his negative fear determination by an IJ violates his due process rights. (Am. Pet. ¶¶ 70–77). The

Government responds that ICE is authorized to detain and remove Alas Rivera under 8 U.S.C. § 1231(a)(6), that it intends to remove Alas Rivera to Mexico, that Alas Rivera has received all process he is entitled to under law, and that this Court need not address Alas Rivera's allegations regarding third-country removal protections given the availability of relief in D.V.D. v. U.S. Department of Homeland Security, 821 F.Supp.3d 102 (D.Mass. 2026), aff'd in part, vacated in part, No. 26-1212, 2026 WL 2797801 (1st Cir. Sep. 18, 2026), and cert. granted sub nom. Department of Homeland Security v. D.V.D., No. 26-426, 2026 WL 2917860 (U.S. Sep. 29, 2026), a pending class action scheduled for oral argument in the United States Supreme Court on December 9, 2026. (Resp'ts' Resp. Am. Pet. Writ Habeas Corpus ["Resp."] at 4, ECF No. 19). The Court will address each issue in turn.

**1. Alas Rivera's Detention Under 8 U.S.C. § 1231(a)**

The facts and arguments concerning Alas Rivera's due process claim as to his detention are similar to those in Santos Escobar v. Mullin, No. GLR-26-1740, 2026 WL 1674825, at *1–2 (D.Md. June 10, 2026), Solis Nolasco v. Noem, 820 F.Supp.3d 398, 401–03 (D.Md. 2026), Montoya Palacios v. Baker, No. GLR-25-4045, 2026 WL 171690, at *1–2 (D.Md. Jan. 22, 2026), aff'd sub nom., Palacios v. Bacon, No. 26-6251, 2026 WL 1154321 (4th Cir. Mar. 24, 2026), and other cases before this Court. As in those cases, there is no dispute here that Alas Rivera is detained under 8 U.S.C. § 1231(a). (Resp. at 4). That provision generally requires that, "upon the issuance of a final order of removal to a noncitizen, the individual shall be removed 'within a period of 90 days'" (the "removal period"). Omorodion v. Guadian, No. TDC-26-3265, 2026 WL 2923746, at *8 (D.Md. Sep.

29, 2026) (quoting 8 U.S.C. § 1231(a)(1)(A)). Section 1231(a) further requires that "noncitizens who do not leave the United States or are not removed within the removal period, 'pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.'" Id. (quoting 8 U.S.C. § 1231(a)(3)). Under § 1231(a)(6), however, the government can either continue to detain certain noncitizens deemed "inadmissible" beyond the removal period, or it may release them under specified terms of supervision. Id. § 1231(a)(6); see also 8 U.S.C. § 1182 (identifying categories of noncitizens who are "inadmissible").

Here, the Government asserts, and Alas Rivera does not dispute, that he may be detained beyond the removal period under 8 U.S.C § 1231(a)(6). (See Resp. at 4). Instead, like in Santos Escobar, 2026 WL 1674825, at *2, and Solis Nolasco, 820 F.Supp.3d at 403–04, the dispute lies in whether Alas Rivera's removal is likely to occur in the reasonably foreseeable future, such that the Government may continue to detain him beyond the removal period, (Resp. at 4–5; Reply at 10–14).

The seminal case on detention beyond the removal period is Zadvydas v. Davis, 533 U.S. 678 (2001), which this Court reviewed in Solis Nolasco:

> In Zadvydas, the Supreme Court considered whether the Government may detain a noncitizen under 8 U.S.C. § 1231(a)(6) "indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal." 533 U.S. at 682. The two noncitizen-petitioners in Zadvydas received removal orders and had been detained well beyond their removal periods under 8 U.S.C. § 1231(a)(6), partly because their native countries and other countries to which they had connections had refused to accept them. Id. at 684–86. The petitioners challenged the extent of the Attorney General's authority to detain them on a seemingly indefinite

> basis despite the unlikelihood of the Government securing their removal. Id. at 684–86, 688.
>
> In assessing that authority, the Supreme Court recognized that "Congress has 'plenary power' to create immigration law, and that the Judicial Branch must defer to Executive and Legislative Branch decisionmaking in that area." Id. at 695. "But that power," the Court explained, "is subject to important constitutional limitations." Id. And "an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinite and potentially permanent." Id. at 696 (citation omitted). Considering the significant liberty interest at stake and the lack of "congressional intent to authorize indefinite, perhaps permanent, detention," id. at 699, the Court held that a noncitizen's detention pending removal is presumptively reasonable only for six months (inclusive of the removal period), after which, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing," id. at 701.

820 F.Supp.3d at 404. Here, Alas Rivera argues that his detention is unlawful under Zadvydas because his removal is not likely to occur in the reasonably foreseeable future. (Reply at 11–13). The Government responds that (1) Alas Rivera's claim is premature because he has been detained for less than two months, and (2) "the only delay in his removal to Mexico is this proceeding." (Resp. at 4).

As to the Government's argument characterizing Alas Rivera's claim as premature, courts in this District have previously rejected that exact argument in Santos Escobar, Solis Nolasco, Montoya Palacios, and Liech v. Mullin, No. TDC-26-3114, 2026 WL 2920342 (D.Md. Sep. 28, 2026), concluding that the presumptively reasonable period expires six months after a noncitizen's removal order becomes administratively final, and the clock

does not restart upon the noncitizen's re-detention, Santos Escobar, 2026 WL 1674825, at *3; Solis Nolasco, 820 F.Supp.3d at 405 (collecting cases); Montoya Palacios, 2026 WL 171690, at *3; Liech, 2026 WL 2920342, at *6. Here, Alas Rivera's removal order became final on October 25, 2024, after both parties waived appeal. (Reply at 11; see IJ Order at 5, ECF No. 19-2). Therefore, his six-month period expired on April 25, 2025, sixteen months before ICE re-detained him on August 29, 2026.[4]

Turning to the Government's next argument that "the only delay in [Alas Rivera's] removal to Mexico is this proceeding," (Resp. at 4), the Court disagrees. Here, Alas Rivera has shown good reason to believe that his removal to Mexico is not significantly likely to occur in the reasonably foreseeable future for four reasons. First, Alas Rivera has been granted withholding of removal from the only country to which he has a claim to citizenship—El Salvador, (Reply at 11–12)—which "substantially increases the difficulty of removing him," Santos Escobar, 2026 WL 1674825, at *4 (quoting Munoz-Saucedo v. Pittman, 789 F.Supp.3d 387, 398 (D.N.J. 2025)). Second, the Notice of Revocation of Release that the Government issued to Alas Rivera cites no violation of release conditions since his release twenty-four months ago on October 25, 2024. (Reply at 12; NRR at 2). Indeed, the Government could have, but apparently did not, work towards securing Alas Rivera's removal to Mexico for those twenty-four months. Third, by granting Alas Rivera

---

[4] The Court also noted in Solis Nolasco v. Noem, 820 F.Supp.3d 398 (D.Md. 2026), that "the six-month presumption of reasonableness shifts the burdens between the Government and the noncitizen-detainee, but it does not prohibit judicial review of a noncitizen's detention for six months. Thus, even if [Alas Rivera's] six-month period had not yet expired, his [Amended] Petition still would not be premature," id. at 405 n.5 (citing Cruz Medina v. Noem, 794 F.Supp.3d 365, 375–76 (D.Md. 2025)).

an EAD in February 2025, which remains valid through 2030, (EAD Approval Notice at 1), the Attorney General determined that Alas Rivera could not be removed either because the countries designated in his removal order refused him or because his removal "is otherwise impracticable or contrary to the public interest," 8 U.S.C. § 1231(a)(7). Finally, Alas Rivera has expressed a fear of removal to Mexico, the only other country to which the Government is now attempting to remove him. (See Alas Rivera Decl. ¶¶ 9–11).

Because Alas Rivera has made this showing, the burden shifts to Respondents to provide information suggesting that they will remove Alas Rivera in the reasonably foreseeable future. Here, the Government offers no information or evidence to rebut Alas Rivera's showing beyond a conclusory statement that "ICE intends to remove [him] to Mexico." (See Resp. at 4); Santos Escobar, 2026 WL 1674825, at *4 (rejecting an identical statement as a "bare assertion[ ]" that is insufficient to meet the Government's burden). For instance, the Government has not submitted any travel documents, any information as to what steps it has taken—if any—to request Mexico to accept Alas Rivera, or any information indicating that Mexico has agreed to accept Alas Rivera. That Alas Rivera holds Mexican permanent residency does not change the analysis. Indeed, the fact that the Government instructed Alas Rivera to obtain a travel document from El Salvador and "[s]olicit permission from another country," (Warning Failure Depart Form at 3), to accept him further undermines their argument that "the only delay in [Alas Rivera's] removal to Mexico is this proceeding," (Resp. at 4), and confirms that it is not likely that it will remove him to Mexico in the reasonably foreseeable future. Alas Rivera's continued detention, therefore, violates his due process rights as interpreted under Zadvydas.

**2. Alas Rivera's Removal to Mexico**

Alas Rivera also argues that his removal to Mexico without IJ review of the negative fear finding violates his right to procedural due process. (Am. Pet. ¶¶ 70–73; Reply at 6–10). The Government contends that Alas Rivera has received all process due to him and that this Court need not address his arguments challenging third country removal protections because are more appropriately addressed in D.V.D., which is scheduled for oral argument in the United States Supreme Court on December 9, 2026, (Resp. at 4); 821 F.Supp.3d 102. The Court disagrees. Not addressing Alas Rivera's claim regarding third country removal protections "would effectively preclude [him] from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the D.V.D. class if he is removed" to Mexico before the Supreme Court issues a judgment in the case. See Portela-Hernandez v. Trump, No. BAH-25-1633, 2026 WL 74042, at *10 (D.Md. Jan. 9, 2026) (quoting Sagastizado v. Noem, 802 F.Supp.3d 992, 1008 (S.D. Tex. 2025)); see also Mendoza Palacios v. Mullin, 829 F.Supp.3d 67, 78–79 (D.Md. 2026). Therefore, this Court will address Alas Rivera's claim notwithstanding the pendency of D.V.D. at the Supreme Court.

"It is 'well-established' that the Fifth Amendment entitles noncitizens to due process of law in the context of removal proceedings." Omorodion, 2026 WL 2923746, at *10 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)) (citing United States v. Lopez-Collazo, 824 F.3d 453, 460–61 (4th Cir. 2016)). To determine what process Alas Rivera is entitled to, the Court considers the three-factor test outlined in Mathews v. Eldridge, 424 U.S. 319 (1976): (1) "the private interest that will be affected by the official action"; (2) "the risk of

an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," id. at 335.

Applying the Mathews factors here, first, the private interest affected by official action is Alas Rivera's interest in not being removed to Mexico, a country where he could face persecution or torture. As noted above, Alas Rivera fled Mexico in 2021 after Grupo el Telo, a criminal group associated with drug cartels, threatened to kill him, his partner, and his partner's son because the son refused to sell drugs for them. (See Alas Rivera Decl. ¶¶ 8–11; Reply at 8). Alas Rivera has also attested to the Mexican police's involvement with members of the criminal group that threatened him and to the group's far-reaching power and influence in Mexico. (Alas Rivera Decl. ¶¶ 8–11). Accordingly, this Court concludes that Alas Rivera has demonstrated that his private interest in not being removed to Mexico, where he could be subject to torture and persecution at the hands of drug cartels, is "significant enough to justify procedural protections." Portela-Hernandez, 2026 WL 74042, at *10–12 (quoting Cruz Medina v. Noem, 806 F.Supp.3d 536, 549 (D.Md. 2025)); Takletsadik v. Guadian, No. MJM-26-3148, 2026 WL 2614243, at *3 (D.Md. Sep. 3, 2026) (quoting Cruz Medina, 806 F.Supp.3d at 549); Santos Escobar, 2026 WL 1674825, at *5 (quoting Portela-Hernandez, 2026 WL 74042, at * 11).

Second, the risk of an erroneous deprivation of that interest under procedures outlined in existing DHS Guidance is high where, as here, Alas Rivera's expressed fear of persecution or torture upon removal to Mexico was reviewed by only a single DHS asylum

officer, who concluded—in the form of one checked box without making any findings of fact or credibility assessment and without offering any legal analysis or explanation—that Alas Rivera "did not establish that it is more likely than not that [he] will be persecuted or tortured in Mexico." (Third Country Screening Notice at 2); see Portela-Hernandez, 2026 WL 74042, at *11 ("The Court need look no further than DHS regulations themselves to conclude that, where a person alleges that he would be persecuted or tortured if removed to a particular country, a single review by an asylum officer creates an unacceptably high risk of erroneous deprivation." (quoting Cruz Medina, 806 F.Supp.3d at 536)); Takletsadik, 2026 WL 2614243, at *3. Because the "guarantee of due process includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of [a petitioner's] particular claim," see Portela-Hernandez, 2026 WL 74042, at *11 (quoting Aden v. Nielsen, 409 F.Supp.3d 998, 1010 (W.D.Wash. 2019)), the Government's refusal to have an IJ review Alas Rivera's negative fear determination deprives him of "the opportunity to present his fear-based claim to a neutral adjudicator for correction of" a "potentially erroneous determination" by a single DHS asylum officer, A.A.M. v. Andrews, No.1:25-CV-01514-DC-DMC(HC), 2025 WL3485219, at *9 (E.D.Cal. Dec.4, 2025). Accordingly, this factor, too, weighs in Alas Rivera's favor.

Finally, the third Mathews factor also weighs in Alas Rivera's favor. "Requiring [IJ] review in [Alas Rivera's] case provides significant but minimally burdensome procedural safeguards in the form of independent review by a subject-matter expert and the opportunity to receive a written explanation of a denial by an [IJ]." Portela-Hernandez, 2026 WL 74042, at *12 (quoting Sagastizado, 802 F.Supp.3d at 992). Although "requiring

[a] DHS asylum officer's negative decision to be reviewed de novo by an immigration judge would likely result in some delay and administrative burden . . . 'some delay and administrative burden is inherent in due process.'" Takletsadik, 2026 WL 2614243, at *4 (alteration in original) (quoting Barrientos v. Baker, No. MJM-26-984, 2026 WL 1166361, at *4 (D.Md. Apr. 8, 2026)). Moreover, any delay and administrative burden to the Government is de minimis because "such procedures already exist in the system," and DHS routinely provides IJ review in the reasonable fear context. Id.; see 8 C.F.R. §§ 1003.42(e), 1208.31(g).

In sum, the Court finds that the Mathews factors weigh in favor of requiring that an IJ review Alas Rivera's negative fear determination before removal to Mexico.

## III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Alas Rivera's Amended Petition for Writ of Habeas Corpus (ECF No. 15). A separate Order follows.

Entered this 29th day of October, 2026.

/s/
George L. Russell, III
Chief United States District Judge